IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIE HOUGH, PATRICIA DILLON, PHYLLIS HUDMAN, DEBORAH RIMMER, MELINDA WEBSTER<br>    Plaintiffs | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. 4:cv: 10-2206 |
| vs. | )<br>) |
| TEXAS DEPARTMENT OF STATE HEALTH SERVICES- MEAT SAFETY ASSURANCE UNIT<br>    Defendant | )<br>)<br>) JURY TRIAL DEMANDED |

PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, MARIE HOUGH, PATRICIA DILLON, PHYLLIS HUDMAN, DEBORAH RIMMER and MELINDA WEBSTER ( hereinafter referred to as Hough, Dillon, Hudman, Rimmer and Webster or collectively as " Plaintiffs"), complaining of THE TEXAS DEPARTMENT OF STATE HEALTH SERVICES- MEAT SAFETY ASSURANCE UNIT (" Meat Safety") Defendant, and for cause of action would respectfully show the following:

I.

PARTIES

1.  Plaintiff, Marie Hough, is a 60 year old female. She is a citizen of the United States, the State of Texas and is a resident of Harris County, Texas.

2.	Plaintiff Patricia Dillon is a 56 year old female. She is a citizen of the United States, the State of Texas and is a resident of Bellville, Texas.

3.	Plaintiff Phyllis Hudman is a 53 year old female. She is a citizen of the United States, the State of Texas and is a resident of Harris County, Texas.

4.	Plaintiff Deborah Rimmer is a 58 year old female. She is a citizen of the United States, the State of Texas and is a resident of Harris County, Texas.

5.	Plaintiff Melinda Webster is a 44 year old female. She is a citizen of the United States, the State of Texas and is a resident of  Bryan, Texas.

6. Defendant, The Texas Department of State Health Services- Meat Safety Assurance Unit, University of Texas MD Anderson Cancer Center,  is a governmental unit of the State of Texas and may be served with process by serving the Office of Texas Secretary of State, Citations Division, PO Box 12079, Austin, Texas 78711.

II.

JURISDICTION AND VENUE

7.  Plaintiffs bring this action against Defendant for its violation of Plaintiffs' rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and the Civil Rights Act of 1991 and the Age Discrimination in Employment Act (ADEA) , 29 U.S.C. §626(b), as amended, which incorporates by reference Sections 16( c)  and 17 of the Fair Labor Standards Act.  Plaintiffs invoke this Court's jurisdiction pursuant to 42 U.S.C. section 2000e-5 and 28 U.S. C. § 1331.

8.  All conditions precedent for jurisdiction have been met. Plaintiffs all timely

filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC). Each Plaintiff received a Notice of Right to Sue, dated March 23, 2010, from the US Department of Justice. Copies of the Right to Sue Notices are attached as Exhibit A. This Complaint has been filed within 90 days of receipt of these Right to Sue Notices.

III.

STATEMENT OF THE CASE

9. All of the Plaintiffs are bringing this cause of action against Defendant for violations of rights under Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. §§ 2000e *et seq.* and all Plaintiffs except Plaintiff Webster also bring causes of action against Defendant for violations of the ADEA.

10. All of the Plaintiffs were employed as Meat Safety Assurance Inspectors with the Texas State Department of Health Services and all were supervised by Jennifer Williams, DVM.

11. All Plaintiffs were subjected to discrimination in the form of disparate treatment and unequal disciplinary actions because of their sex, female by their supervisor, Jennifer Williams, DVM. Female inspectors were subjected to harsher reprimands and disciplinary actions than male inspectors; were reprimanded and received disciplinary write ups for infractions that male inspectors were not reprimanded for, and assigned female inspectors plant routes that result in longer travel and less compensation, while giving more desirable routes to the male inspectors.

12. When the Plaintiffs complained about the discriminatory treatment, they were

were retaliated against by Defendant. Defendant's supervisor, Jennifer Williams, subjected Plaintiffs to verbal abuse, engaged in unprofessional conduct against Plaintiffs', often in front of the managers of plants being inspected by Plaintiffs so as to undermine their authority, threatened to fire them or send them to undesirable plant locations. Retaliatory actions included disciplinary write ups and plant route assignments that caused Plaintiffs to suffer economic detriment in the form of lost travel pay, lost wages and lost overtime pay.

       13. Plaintiffs have filed complaints about Dr. Williams treatment of themselves and fellow female inspectors, both formally through the administrative complaint process and informally. Dr. Williams retaliated against the female inspectors by subjecting them to harsher discipline, giving them less desirable plant inspection routes and subjecting them to an increasingly hostile and abusive work environment.

       14. Dr. Williams has also made numerous age animus comments to Plaintiffs including that they should "ride out their time in another department and then retire" or that they should just quit. On numerous occasions she has expressed her intention to "clean house" and get rid of the old inspectors.

       15. As a direct result of the abusive and discriminatory treatment, which included threats of discharge and disciplinary action, Plaintiffs Hough, Hudman, Rimmer and Webster were all constructively discharged. Plaintiffs work environment became so hostile and abusive that a reasonable person in same or similar circumstances would feel compelled to resign. Within approximately six (6) months, four of the Plaintiffs were constructively discharged. Plaintiff Hudman resigned in late June, 2008, Plaintiff

Webster in August, 2008, Plaintiff Rimmer in September 2008 and finally Plaintiff Hough in late January 2009. Plaintiff Dillon remains employed by Defendant but succeeded in obtaining a transfer to a new supervisor.

16. Plaintiffs further allege that Defendant's policies and procedures were selectively enforced resulting in disparate treatment of Plaintiffs. Based upon their sex and age, Plaintiffs was subjected to different terms and conditions of employment and were subjected to impermissible retaliation and in all but one case, were ultimately constructively discharged.

IV.

FACTS

17. Plaintiff Hough had been employed as a Meat Safety Assurance Inspector by Defendant from March 1989 through January 31, 2009, when she was constructively discharged from her position.

18. During her employment with Defendant, Plaintiff Hough had no significant performance or disciplinary problems up until April 2006 when Dr. Williams became her supervisor.

19. Plaintiff Dillon has been employed as a Meat Safety Assurance Inspector by Defendant from March 1991 to the present.

5

20. Prior to the time that Dr. Williams became her supervisor, Plaintiff Dillon had no significant performance or disciplinary problems.

21. Plaintiff Hudman had been employed as a Meat Safety Assurance Inspector by Defendant from January 1992 through June 30, 2008, when she was constructively discharged from her position.

22. During her employment with Defendant, Plaintiff Hudman had no significant performance or disciplinary problems up until April 2006 when Dr. Williams became her supervisor.

23. Plaintiff Rimmer had been employed as a Meat Safety Assurance Inspector by Defendant from January 1998 through September 19, 2008, when she was constructively discharged from her position.

24. During her employment with Defendant, Plaintiff Rimmer had no significant performance or disciplinary problems up until April 2006 when Dr. Williams became her supervisor.

25. Plaintiff Webster had been employed as a Meat Safety Assurance Inspector by Defendant from October 30, 2006 through August 15, 2008, when she was constructively discharged from her position.

26. Plaintiffs witnessed Dr. Williams make derogatory remarks to women inspectors about their age, weight and make-up. She called some of the female inspectors "whiners" and "tattletales" and made other remarks about the women inspectors. She did not make any derogatory comments about the male inspectors.

27. Dr. Williams has repeatedly displayed rude and unprofessional conduct towards Plaintiffs and other female inspectors so as to undermine their authority at the plants they inspected. She accused Hough of "not using my brain" and has screamed at and called other female inspectors names, including using profanity. Williams called Plaintiff Hudman "a prick."

28. Dr. Williams has made several statements in which she stated that she had been given authority by Austin to get rid of whoever she wanted. She often threatened Plaintiffs and the other female inspectors with termination.

29. When complaints about Dr. Williams were made to personnel in Austin and locally, by Plaintiffs, Dr. Williams retaliated against Plaintiffs by subjecting them to harsher reprimands and disciplinary action than she imposed on male inspectors. Plaintiff Hough filed a complaint with the Health and Human services civil rights division and was retaliated against by being assigned undesirable routes and being denied travel reimbursement, all of which constitute disparate treatment by Williams. Williams has subjected Plaintiffs to verbal abuse during which she has yelled at Plaintiffs in front of co-workers and plant personnel in an effort to embarrass and humiliate them. She verbally criticized the Plaintiffs' job performances in front of the plant workers that they was required to inspect. She has also threatened to "ship [the various Plaintiffs ] off to Fishers and not authorize any travel reimbursement" if they complained about Williams.

Fisher's is the plant that is the farthest from most of the female inspectors' homes. Williams has also threatened to fire Plaintiffs and/or write them up on numerous occasions. Plaintiffs received formal disciplinary write ups for infractions that male employees are not reprimanded for.

30. Dr. Williams has also discriminated against the women inspectors in the way she has assigned plant routes and headquarters locations. In some cases she has retaliated against female inspectors for making complaints by giving them undesirable routes. Overall, women have been assigned routes that result in them having to drive much farther distances to perform their work while receiving less travel compensation than the male inspectors. In addition, work assignments were made that clearly provided economic advantages as well as time saving advantages to the men. This has caused the female inspectors to suffer economic detriment in the form of lost travel pay , lost wages and overtime pay.

31. Plaintiffs, other than Dillon, were constructively discharged as a result of the treatment they got from Dr. Williams. Dr. Williams subjected them to a constant barrage of abusive and derogatory remarks, subjected them to harsher discipline and assigned them routes that caused them to have to go farther for less compensation. Complaints about her behavior only resulted in retaliatory actions by Dr Williams. Ultimately, the hostile and abusive environment became unbearable and the female plaintiffs were forced out of the jobs they had held and excelled in for many years.

32. Plaintiffs Hough, Hudman, Dillon, Rimmer and Webster assert that they were was subjected to sex discrimination in that male inspectors were treated more favorably than female inspectors and that female inspectors were subjected to disparate treatment. .

33. Plaintiffs Hough, Hudman, Dillon and Rimmer also assert they were subjected to age discrimination .

34. In addition, all Plaintiffs assert that the actions taken by Dr. Williams, including various disciplinary actions, were retaliatory and that female inspectors were given disciplinary write ups and other harsh discipline when they complained about Williams discriminatory treatment.

V.

CLAIMS FOR RELIEF

SEX and AGE DISCRIMINATION AND RETALIATION

35. Plaintiff incorporates paragraphs 1-34 herein by reference as if set forth verbatim.

36. Defendant employs more than 15 persons and is therefore an Employer with the meaning of Title VII of the Civil Rights Act of 1964, as amended and the Civil Rights Act of 1991 and the Age Discrimination in Employment Act, 29 U.S.C. §626(b), as amended,

37. Plaintiffs are all females over the age of 40 and are therefore members of a protected class as such is defined in Title VII, 42 U.S.C. §2000e, *et seq*.

38. Defendant 's acts and omissions, as set forth herein, constitute

discrimination based upon Plaintiff's sex and/or age and such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* and the Civil Rights Act of 1991 and the ADEA, 29 U.S.C. §626(b), as amended. . Plaintiffs further allege that the discrimination against them was intentional and willful within the meaning of the above described statutes. Accordingly, they are entitled to recover for the damages inflicted upon them as a proximate result of Defendant's negligent and/or intentional violation of said statutes.

39.  Defendant and its agents engaged in unlawful employment practices, consisting of discriminating against Plaintiff with respect to the terms, conditions and privileges of employment by failing to hire her because of her age and/or sex.

40.  At all times mentioned herein, all persons employed by Defendant were acting as agents for Defendant and were acting within the course and scope of their authority, agency and/or employment with Defendant. Plaintiffs give notice that they intend to rely upon the doctrine of respondeat superior and principal/agency law.

41.  As a direct and proximate result of Defendant's conduct, Plaintiffs have sustained damages in the form of back pay, lost wages, front pay, lost travel pay, future pecuniary losses, lost employment benefits, for which Defendant is liable.

42.  Plaintiffs are entitled to recover compensatory as well as exemplary damages.

43.  Each of the foregoing acts or omissions whether taken singularly or in any combination was a proximate cause of the incidents and damages made the basis of this action.

44.     The conduct of Defendant, described herein, was willful and/or malicious so as to entitle Plaintiffs to recover exemplary damages to punish Defendant for the continuing conduct and to deter such conduct in the future. Accordingly, Plaintiffs ask that exemplary damages be awarded against the Defendant in a sum within the jurisdictional limits of this Court.

XI.

JURY TRIAL

45.     Plaintiff has made a proper demand for trial by jury.

XII.

DAMAGES

46. Plaintiffs seek recovery from Defendant for the damages to which they are entitled due to Defendant's discrimination, retaliation, constructive discharge and all other wrongful conduct alleged herein. Plaintiff seeks to recover lost wages, future pecuniary loss, lost benefits, lost travel compensation , attorneys' fees and other non-pecuniary losses. Plaintiff further seeks any other relief authorized under the Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 and the Age Discrimination in Employment Act ( ADEA) and any other applicable law or statute.

WHEREFORE, Plaintiffs Hough, Dillon, Hudman, Rimmer and Webster respectfully requests that the Defendant be cited to  appear herein and that on final trial, Plaintiffs recover judgment against Defendant for all compensatory damages, actual damages, damages pursuant to Title VII, damages pursuant to the Civil Rights Act of 1991, damages pursuant to the Age Discrimination in Employment Act ( ADEA) ,

punitive damages, reasonable and necessary attorney's fees, exemplary damages, prejudgment and post judgment interest, costs of court and for such further relief, at law or in equity to which Plaintiffs are justly entitled.

          Respectfully submitted,
          LAW OFFICES OF LAUREN M. SERPER, PC


          /s/ _Lauren M. Serper
          LAUREN M. SERPER
          FEDERAL ID No. 7334
          TX BAR NO. 18032100
          3405 Edloe, Suite 200
          Houston, Texas 77027
          (713) 278-9398
          (713) 785-0808 (fax)
          ATTORNEY FOR PLAINTIFFS