IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARIE HOUGH, PATRICIA DILLON,  §
PHYLLIS HUDMAN, DEBORAH RIMMER, §
and MELINDA WEBSTER,            §
                                §
    Plaintiffs,                 §
                                §
v.                              §    CIVIL ACTION NO. H-10-2206
                                §
TEXAS DEPARTMENT OF STATE       §
HEALTH SERVICES - MEAT SAFETY   §
ASSURANCE UNIT,                 §
                                §
    Defendant.                  §

MEMORANDUM AND ORDER

Pending is Defendant Texas Department of State Health Services-Meat Safety Assurance Unit's Motion for Summary Judgment (Document No. 24).  Plaintiffs Marie Hough ("Hough"), Patricia Dillon ("Dillon"), Phyllis Hudman ("Hudman"), Deborah Rimmer ("Rimmer"), and Melinda Webster ("Webster," and collectively, "Plaintiffs") allege that their employer, or former employer,[1] Defendant Texas Department of State Health Services-Meat Safety Assurance Unit, discriminated against them based on their sex and retaliated against them for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964.[2]  For the

_____

[1] All Plaintiffs except Dillon resigned their employment by Defendant as Meat Inspector IVs.  Plaintiff Dillon remains an employee of Defendant, but under a different supervisor.

[2] 42 U.S.C. § 2000e *et seq.*

reasons set forth below, the Court finds that Defendant is entitled to summary judgment on three of the retaliation claims and that Defendant's motion for summary judgment otherwise should be denied.

## I.  Retaliation

To state a *prima facie* case of retaliation under Title VII, each Plaintiff must show that: (1) she was engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Grimes v. Tex. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996) (citations omitted).  In the context of retaliation, an "adverse employment action" is defined more broadly than in discrimination cases; it includes any action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473,

484 & n.9 (5th Cir. 2008) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)).

Under the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973), once a plaintiff has established a prima facie case, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. *See* Septimus v. Univ. of Hous., 399 F.3d 601, 609-10 (5th Cir. 2005). If the employer meets its burden to show a legitimate, non-retaliatory reason for the adverse action, then a plaintiff may prevail if she shows that the reason given by the employer was merely pretext for retaliation. Id. at 610-11.

In seeking summary judgment on Plaintiffs' retaliation claims, Defendant contends that none of the Plaintiffs can establish a prima facie case for retaliation, arguing that during the period of their employment by Defendant: (1) only Hough filed a complaint of discrimination; and (2) none of the Plaintiffs suffered an adverse employment action as a result of a protected activity.[3]

A.   Webster, Rimmer, and Hudman

Webster contends that she engaged in protected activity when she filed an administrative complaint against Dr. Jennifer

---

[3] Defendant does not attempt to articulate a legitimate, non-retaliatory reason for its alleged adverse employment actions. Therefore, summary judgment on retaliation must be denied for any Plaintiff who can establish a prima facie case for retaliation.

Williams's ("Williams"), her supervisor, in August 2007.[4]   As
Defendant points out, Webster's administrative complaint did not
mention or otherwise address any discriminatory practices, but
rather complained about Williams's demeanor "with the inspectors"
in general.[5]  This did not put Defendant on notice of a Title VII
discrimination complaint and therefore does not suffice for
protected activity.  *See* Harris-Childs v. Medco Health Solutions,
Inc., 169 F. App'x 913, 916, (5th Cir. 2009) (per curium)
(unpublished op.) (affirming district court's determination of no
protected activity where "there is no evidence that [Appellant],
when she made her complaints to management, ever mentioned that she
felt she was being treated unfairly due to her *race* or *sex*"
(emphasis in original)); Moore v. United Parcel Service Serv. Inc.,
150 F. App'x 315, 319 (5th Cir. 2009) (per curium) (unpublished
op.) (filing a grievance that "made no mention of race
discrimination" was not protected activity under Title VII).  Thus,
because Webster's administrative complaint alleged nothing about
race, color, religion, sex, or national origin, Webster has failed
to raise a fact issue on the requisite predicate for a retaliation
claim under Title VII.

---

[4] *See* Document 24, ex. O at DSHS003547; *see also* Document No.
27, ex. 10 at 3 of 15 (Webster indicates she filed only one
complaint).

[5] Document 24, ex. O.

Similarly, neither Hudman nor Rimmer has presented summary judgment evidence that either of them ever made a Title VII complaint against Williams or engaged in other protected activity during the time of their employment by Defendant.  Although Rimmer claims that she complained about Williams's conduct to Dr. Lansford,[6] she does not specify *when* she did so or *what* she said.[7] Moreover, neither Rimmer nor Hudman reports any specific instance where either Plaintiff complained about Title VII *discrimination* to management.  *See* <u>Moore</u>, 150 F. App'x at 319 (general complaints about mistreatment that do not mention discrimination are not protected activity).  Like Webster, neither Rimmer nor Hudman has presented summary judgment evidence to establish a predicate for a retaliation claim or, for that matter, evidence of an adverse employment action suffered *as a result* of protected activity. Hence neither of them establishes a prima facie case of retaliation.

B.   <u>Hough and Dillon</u>

Hough and Dillon have raised genuine issues of material fact on their retaliation claims.  Within two weeks after filing her

---

[6] Dr. T.R. Lansford is a veterinary supervisor and Meat Safety Assurance Unit Assistant Manager.  *See* Document No. 24, ex. O at DSHS003553.

[7] *See* Document No. 24, ex. E at 35:14-36:10 (Hudman); *see* <u>*also*</u> <u>id.</u>, ex. F at 39:8-10 (Rimmer).

Civil Rights Complaint on July 28, 2008, Hough sent an email to
Williams requesting time off in order to pursue her discrimination
claim.[8]  Four days after Williams received Hough's email, Williams
requested that an investigation be made of Hough and Williams's
other inspectors.[9]  "Because being investigated by one's employer
could likely deter a victim from complaining about discrimination,
this qualifies as an adverse action." Lee v. City of Syracuse, 603
F. Supp. 2d 417, 436 (N.D.N.Y. 2009).

Hough also presents evidence that Williams confronted her
about her complaint, stating that "Austin and the civil rights
division would not believe her."[10]  Hough further alleges that
continued harassment and retaliation by Williams forced her to
resign within two months of filing her civil rights complaint.[11]
"Close timing between an employee's protected activity and an
adverse action against him may provide the 'causal connection'
required to make out a prima facie case of retaliation." Swanson
v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997), cert.
denied, 118 S. Ct. 366 (1997); see also Bregon v. Autonation USA
Corp., 128 F. App'x 358, 361 (5th Cir. 2005) (unpublished op.)
(plaintiff established causal link where he "was fired only a week

---

[8] See Document No. 27, ex. 13 at 1 of 6.

[9] See id., ex. 13 at DSHS003395-96.

[10] Document No. 27, ex. 1, 2, and 6.

[11] Id.; Document No. 27 at 7.

after he filed his complaint and he offered evidence that people at
work were likely aware of his complaint").

Likewise, the summary judgment record indicates that Dillon
hired an attorney, Ms. Lauren M. Serper ("Serper"), in March or
April 2008 to respond to the Level III discipline she had received,
and that Serper in May 2008 met with higher ranking supervisors in
Austin to complain about sex discrimination allegedly suffered by
Dillon.[12]  Moreover, Susan Tennyson, Director of Environmental and
Consumer Safety Section, emailed a time line of events which
indicates that as early as April 3, 2008, "[d]iscussions began
about how the women were treated differently than the men."[13]  This
supports an inference that Dillon engaged in protected activity
under Title VII by April or May 2008.

Dillon further alleges that in May 2008, she requested to work
in the Beaumont area for overtime, but Williams instead assigned
her to work at a plant more than 116 miles from her house.  This
denial  of  a  request  to  work  the  additional  hours  and  the

---

[12] Plaintiff produces an email from Susan Tennyson, Director
of Environmental and Consumer Safety Section, to Kathy Perkins,
Director of Regulatory Services, and Butch Johnson, Williams's
supervisor, explaining the timeline of events leading up to this
lawsuit, which indicates that on May 12, 2008, "L. Serper, attorney
for P. Dillon, and others, requested an informal dispute resolution
meeting," and that on May 30, 2008, there was a meeting where
Serper informed supervisors in Austin that "*at least one grievance
would be filed complaining of discrimination*."  Document No. 27,
ex. 7 at DSHS003087.

[13] Id.

reassignment to a post more than 116 miles away, when drawing all reasonable inferences in favor of the non-movant, is evidence of a materially adverse action that could well dissuade a reasonable worker from engaging in protected activity.  Burlington Northern, 126 S. Ct. at 2415.  Considering all reasonable inferences in favor of Plaintiffs, both Hough and Dillon have raised genuine issues of material fact on their retaliation claims.

## II.   Discrimination

Drawing all reasonable inferences in favor of non-movants, genuine issues of material fact exist with respect to Plaintiffs' discrimination claims, including specifically whether similarly situated male inspectors disproportionately received preferential plant patrol assignments for which they received greater monetary benefits in the form of travel reimbursements, whereas Plaintiffs because of their sex were given plant patrol assignments requiring longer travel times under conditions where they were denied comparable travel reimbursements. Accordingly, Defendant's motion for summary judgment on Plaintiffs' discrimination claims is denied.

## III.   Order

Based on the foregoing, it is

ORDERED that Defendant Texas Department of State Health Services-Meat Safety Assurance Unit's Motion for Summary Judgment (Document No. 24) is GRANTED in part as to the retaliation claims of Plaintiffs Rimmer, Hudman, and Webster, and Rimmer's, Hudman's, and Webster's retaliation claims are DISMISSED; and the motion for summary judgment otherwise is in all things DENIED.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 28th day of August, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE